UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23069-ALTMAN/Goodman

JUD IRELAND,

    *Plaintiff*,

*v.*

DigiTraidx LLC, *et al.*,

    *Defendants.*

_____/

## ORDER

A creditor sued a start-up company, its alleged successor, and two officers of those companies. The Defendants now move to dismiss all eight counts. We referred the motion to United States Magistrate Judge Jonathan Goodman. After careful review, we **GRANT** the motion to dismiss.

## THE FACTS

Our Plaintiff—Jud Ireland—claims that he "lent . . . $485,000," "secured by three separate promissory notes," to Dealer Market Exchange PR, LLC ("DMX"), a "start-up company formed in Puerto Rico" whose "purpose was to develop cloud-based software and applications for use in the automobile industry." Amended Complaint (the "AC") [ECF No. 15] ¶¶ 2, 7, 21; *see also id.* ¶ 8 ("Additionally, Ireland is the assignee of [other] creditors" who "were themselves creditors and shareholders of DMX and who have assigned their legal claims against DMX stemming from its default on their loans to Ireland."). According to the Plaintiff, "two corporate insiders"—Javier Ruiz and Adrian Jayasinha—"used their positions as investors, officers, and managers of DMX to orchestrate the fraudulent transfer of essentially all of DMX's assets to DigiTraidx, a successor company which Jayasinha and Ruiz controlled." *Id.* ¶ 1; *see also id.* ¶¶ 24–25 (alleging that Ruiz served as "an officer and manager of DMX, and he held an ownership interest in the company," and that

Jayasinha "owned approximately 25% of DMX"). Specifically, the AC asserts that, in "December of 2019, DMX transferred substantially all of its assets, including the Software, to . . . Jayasinha and Ruiz [ ] for pennies on the dollar in a transaction that was concealed from DMX's creditors, including Ireland," only for Jayasinha and Ruiz to "immediately transfer[ ] those same assets to DigiTraidx . . . for purposes of continuing DMX's business." *Id.* ¶ 3. "Despite the fact that DigiTraidx has continued DMX's business as its direct successor," the AC continues, "neither DMX nor DigiTraidx has agreed to satisfy DMX's creditors." *Id.* ¶ 84.

In December 2023, our Plaintiff—at that time proceeding *pro se*—sued some two-dozen parties (including DMX, DigiTraidx, Jayasinha, and Ruiz) in state court. *See* Exhibit B [ECF No. 1-3] at 1. One such party—Carzato LLC ("Carzato")—removed the action to federal court in August 2024. *See generally* Notice of Removal [ECF No. 1]; *see also* Removal Status Report [ECF No. 6] at 1 n.1 ("[D]espite the Complaint being filed on December 22, 2023, only Carzato has been served."). In October 2024, the Plaintiff—now counseled—filed the operative AC, naming only four parties: DMX, DigiTraidx, Jayasinha, and Ruiz.

On December 18, 2024, the Plaintiff filed proof of service as to Jayasinha. *See* Summons Returned Executed [ECF No. 24]. On January 27, 2025, he moved for an extension of time to effectuate service as to DigiTraidx, DMX, and Ruiz. *See* Motion for Extension [ECF No. 25] at 1. Three days later, the Plaintiff amended that motion "to include a request to also extend the time for service of process upon . . . Jayasinha." Amended Motion for Extension [ECF No. 26] at 1 n.1; *see also id.* at 6 ("Upon inspection of the information provided by the process server, Plaintiff in good faith questions the sufficiency of this service, as Ms. Portillo was apparently a 'house sitter' for Mr. Jayasinha, thus raising a question as to whether she 'resided' at the address at the time of service." (cleaned up)).

On February 26, 2025, the Plaintiff filed proof of service as to DigiTraidx, DMX, and Ruiz. *See* Executed Summonses [ECF Nos. 27–29]. The next day, he (again) filed proof of service as to Jayasinha. *See* Executed Summons [ECF No. 30]. On March 10, 2025, DigiTraidx, Jayasinha, and Ruiz sought an extension of time to respond to the AC. *See* Motion for Extension [ECF No. 33]. That request noted that "counsel is not in the process of being retained to represent . . . DMX," that "a Certificate of Cancellation of the Certificate of Organization for DMX was entered by the Secretary of State on December 30, 2023," and that "the status of [DMX] is 'cancelled,' with a termination date of December 30, 2023[.]" *Id.* at 1 n.1. On March 12, 2026, we issued an order denying as moot the motions for extension of time to serve the Defendants and giving the Defendants additional time to respond to the AC. *See* Paperless Order [ECF No. 34]. And, on March 21, 2025, DigiTraidx, Ruiz, and Jayasinha filed a Removal Status Report [ECF No. 37], reiterating that DMX was "terminat[ed]" on "December 30, 2023, per the Department of State." *Id.* at 1 n.1.

In April 2025, DigiTraidx, Ruiz, and Jayasinha (the "Defendants")—but *not* DMX—filed a Motion to Dismiss (the "MTD") [ECF No. 45], arguing (among other things) that the Plaintiff "failed to properly serve the Defendants" *and* "did not and cannot plead personal jurisdictions over the Defendants." MTD at 6. In May 2025, the Plaintiff filed a Response in Opposition to the MTD (the "Response") [ECF No. 52], and the Defendants filed a Reply in Support of the MTD (the "Reply") [ECF No. 56]. That same month, we referred the MTD to United States Magistrate Judge Enjoliqué A. Lett. *See* Order of Referral [ECF No. 47]. The referral was later reassigned to United States Magistrate Judge Jonathan Goodman. *See* Order Recusing Judge and Reassigning Case [ECF No. 48].

In July 2025, Magistrate Judge Goodman issued his Report and Recommendations (the "R&R") [ECF No. 58]. In August 2025, the parties filed objections to the R&R as well as responses to those objections. *See* Plaintiff's Limited Objection [ECF No. 63]; Defendants' Partial Objection [ECF No. 64]; Jayasinha's Response [ECF No. 65]; Plaintiff's Response to Partial Objection [ECF

3

No. 66]. In September 2025, the Plaintiff—without explanation—(yet again) filed proof of service as to DigiTraidx. *See* Executed Summons [ECF No. 67].

## THE LAW

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

## ANALYSIS

Under Local Magistrate Rule 4(b), parties have fourteen days from the date of being served with a copy of an R&R within which to file written objections with the relevant United States District Judge. *See also* FED. R. CIV. P. 72(b)(3). After parties properly object to a magistrate judge's R&R, district courts must review that disposition *de novo*. *See ibid.* But, when no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require *de novo* review only where objections have been properly filed. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). In any event, the "[f]ailure to object to the magistrate

4

[judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

Here, the Magistrate Judge issued the R&R on July 18, 2025. The parties filed objections to the R&R and then responses to those objections. But *none* of the objections concerned the R&R's finding that this Court lacks personal jurisdiction over the Defendants. We therefore review that finding for clear error. After careful review of the R&R, the record, and the applicable law, we find no such error and adopt the R&R.

## I.  Personal Jurisdiction

The Defendants maintain that the Plaintiff "did not and cannot plead personal jurisdiction over the Defendants." MTD at 6. The Magistrate Judge agreed, recommending that we "dismiss" the AC "for failure to adequately plead personal jurisdiction," R&R at 2, and the Plaintiff *never* objected to that finding, *cf.* Defendants' Objection at 2 n.2 ("Defendants agree with the R[&R] insofar as it . . . dismissed the Amended Complaint in full for failure to plead personal jurisdiction."). Because "courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims," *Republic of Pan. v. BCCI Hldgs. (Lux.) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997), we'll thus begin—and end—with personal jurisdiction.[1]

---

[1] Two threshold matters to address. *First*, as noted above, the AC names DMX—and the Plaintiff purports to have served DMX, *see* Executed Summons [ECF No. 28]—and yet DMX neither appeared in this case nor joined the MTD. Still, the Plaintiff hasn't moved for a clerk's entry of default against DMX, despite (mistakenly) suggesting that DMX participated in the MTD. *See* Response at 2.

We harbor doubts as to the viability of the Plaintiff's attempt to serve DMX. *See* Executed Summons [ECF No. 28] (purporting to serve DMX by serving Ruiz's seventeen-year-old daughter). We can also terminate DMX due to the Plaintiff's failure to prosecute his claims against DMX. *See Eades v. Alabama Dep't of Hum. Res.*, 298 F. App'x 862, 863 (11th Cir. 2008) ("District courts possess the ability to dismiss a case . . . for want of prosecution based on two possible sources of authority: Fed. R. Civ. P. 41(b) or their inherent authority to manage their dockets."). In any event, as we'll explain below, the personal-jurisdiction deficiencies that doom the claims against DigiTraidx apply with equal force to DMX.

*Second*, the Magistrate Judge found that the Plaintiff served only Ruiz, not Jayasinha or DigiTraidx. *See* R&R at 17, 22 (recommending that we "quash the service attempt and provide Plaintiff

"The Supreme Court has recognized two types of personal jurisdiction: general jurisdiction . . . and specific jurisdiction." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023). "General jurisdiction lies in the forum where the defendant is domiciled or fairly regarded as at home." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12 (2025) (cleaned up). "A court in such a forum may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Ibid.* (cleaned up). "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). "To exercise specific jurisdiction, the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1317 (11th Cir. 2025) (quotation marks omitted). "[A] federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022). *First*, we "determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute." *Ibid. Second*, we "decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Ibid.*

Our Plaintiff attempts to establish both general and specific jurisdiction over the Defendants. As to DigiTraidx, he alleges that the company (1) engages "in substantial and not isolated activity within the state of Florida by regularly and systematically . . . marketing and licensing the Software to

_____

with another opportunity to effectuate service on Jayasinha" and on "DigiTraidx"). But given that we see no clear error in the R&R's personal-jurisdiction finding, we'll put aside any service issues and move directly to personal jurisdiction. *See Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) ("Even in the absence of good cause, a district court has the discretion to extend the time for service of process.").

automobile dealers who . . . were located and operated in Florida and collected licensing fees therefrom"; and (2) "is a direct successor of DMX, and is bound by the jurisdictional provisions of the promissory note executed by its predecessor in interest[.]" AC ¶ 17. And, as to Jayashinha and Ruiz, our Plaintiff alleges that those individuals "profit[ed] from DMX's and DigiTraidx's licensing of the Software to automobile dealers who . . . were located in Florida." AC ¶¶ 18, 19.[2] The Magistrate Judge rejected each theory—and so do we.

### a. General Jurisdiction

The Magistrate Judge found that the AC "insufficiently alleges . . . general jurisdiction over [the] Defendants." R&R at 28. The R&R explained that the AC's "conclusory statements about the marketing and licensing of software to Florida automobile dealers and the collection of licensing fees, without any specifics about the number and frequency of this activity, is insufficient to confer general jurisdiction over [the] Defendants." *Ibid.*; *see also ibid.* ("To illustrate this point, if DMX (and DigiTraidx, as its purported successor) licensed the Software to one Florida car dealership but at the same time licensed the Software to 500 car dealerships in Puerto Rico, then the Court cannot conclude that its contacts with Florida are such that it is essentially at home here."). It further noted that the "venue and jurisdictional provisions of the Ireland Notes" cannot confer general jurisdiction "such that the[ ] [Defendants] may be sued for all manner of claims . . . in Florida," given that "the relevant provisions are limited to claims 'arising out of or relating to this Note,'" which "is the *opposite* of general jurisdiction." *Id.* at 29–30.

---

[2] As to DMX, the AC alleges that the company—which, as we've said, has never appeared in this action and against which the Plaintiff has never moved for default—(1) "engaged in substantial and not isolated activity within the state of Florida by regularly and systematically . . . marketing and licensing the Software to automobile dealers who . . . were located and operated in Florida and collecting licensing fees therefrom"; (2) had a "CEO and manager . . . located in Florida"; and (3) issued "promissory notes" that "expressly provide that any suit arising out of DMX's breach of the notes shall be filed in a federal or state court in Miami-Dade County, Florida." AC ¶ 16.

We see no clear error in that analysis. "The paradigm forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (cleaned up). But the AC alleges that DigiTraidx is "organized and existing under the laws of Puerto Rico, with its principal office located in Humacao, Puerto Rico." AC ¶ 12.[3] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011), and yet the AC alleges that Jayasinha "resides in California" and that Ruiz "resides in Tennessee," AC ¶¶ 13, 14. Our Plaintiff therefore fails to show that we can exercise general jurisdiction over any of the Defendants.

"To be sure, the Supreme Court has suggested that '[t]he exercise of general jurisdiction is not limited to these forums' and could still exist in an 'exceptional case.'" *Fregoso v. Carnival Corp.*, 2025 WL 3009439, at *2 (S.D. Fla. Oct. 23, 2025) (Altman, J.) (quoting *BNSF*, 581 U.S. at 413 (cleaned up)). But "the burden of proving an exceptional case is heavy."[4] *Foshee v. Banks*, 2022 WL 17547200, at *1 (11th Cir. Dec. 9, 2022). And the Eleventh Circuit has found that in-state activities such as "having a Florida bank account and two Florida addresses, . . . purchasing insurance from Florida companies, filing a financing statement with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to the jurisdiction of the Southern District of Florida for all lawsuits arising out of its agreements with Carnival" fail the exceptional-case standard. *Carmouche*

---

[3] Nor does the AC allege that DMX is incorporated or headquartered in Florida. *See* AC ¶ 11 ("DMX is . . . organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal office located in Guaynabo, Puerto Rico.").

[4] The Supreme Court has pointed to *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952), as an example of an exceptional case. In that case, "war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio," which "then became the center of the corporation's wartime activities" and, therefore, a forum in which "suit was proper." *BNSF*, 581 U.S. at 413. These facts bear little resemblance to our Plaintiff's allegations, which center on "jurisdictional provisions of . . . promissory notes" and on "marketing and licensing . . . to automobile dealers . . . located and operat[ing] in Florida and collecting licensing fees therefrom." AC ¶ 17.

*v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). The Plaintiff's general-jurisdiction argument therefore falls short.

### b.  Specific Jurisdiction

The R&R next found that the Plaintiff fails to establish specific jurisdiction over the Defendants. As to DigiTraidx, it explained that the AC fails to allege that the Plaintiff's claims arise from the "Ireland Notes," from "marketing/licensing/or collection of licensing fees," or from "DMX's contacts with Florida." R&R at 33. And, as to Jayasinha and Ruiz, the R&R determined that the "Plaintiff has not shown a connection" between his claims and the "alleged 'business' of 'profiting from DMX's and DigitTraidx's licensing of the Software to automobile dealers . . . located in Florida." *Id.* at 35; *see also id.* at 36 ("Ireland does not plead *where* these misrepresentations or concealments took place. Moreover, the Amended Complaint does not specifically allege where the injury took place.").

We again find no clear error in this analysis. Our Plaintiff never specifies the subsection of the Florida Long Arm Statute on which he relies, but he seems to proceed under the *first* subsection, which allows plaintiffs to establish personal jurisdiction over "any cause of action arising from . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." FLA. STAT. § 48.193(1)(a)(1). But "[i]n order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). "[F]actors relevant to whether a plaintiff has shown a defendant's general course of business activity[ ] includ[e]: (1) the presence and operation of an office in Florida, (2) the possession and maintenance of a license to do business in Florida, (3) the number of Florida clients served, and (4) the percentage of overall revenue gleaned from Florida clients." *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (quotation marks omitted).

Our Plaintiff fails to demonstrate that the Defendants "carry[ ] on a business or business venture in Florida" within the meaning of Subsection (1)(a)(1). The AC alleges *generally* that DigiTraidx engages in "substantial and not isolated activity within the state of Florida by regularly and systematically operating, conducting, engaging in and carrying on a business or business venture in Florida by, among other things, marketing and licensing the Software to automobile dealers who, upon information and belief, were located and operated in Florida and collected licensing fees therefrom." AC ¶ 17. And it further claims that Jayasinha and Ruiz "profit[ed]" from that activity. *Id.* ¶¶ 18, 19. But those allegations come nowhere close to establishing "a direct affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the business activity." *Doe (V.H.) v. Hyatt Hotels Corp.*, 2024 WL 3859882, at *1 (11th Cir. Aug. 19, 2024) (quotation marks omitted); *see also ibid.* ("Florida courts have interpreted the specific jurisdiction under Florida Statute § 48.193(1)(a)(1) to require 'connexity,' or 'a causal connection between the defendant's activities in Florida and the plaintiff's cause of action.'"). Given that "occasional and insignificant business operations don't fulfill Subsection (1)(a)(1)," we cannot say that the AC—which describes "marketing and licensing" in the abstract, without *any* details as to scale or frequency—adequately alleges a theory of specific jurisdiction based on the Defendants' business activity. *Karnas v. Cuban*, 2025 WL 3759241, at *6 (S.D. Fla. Dec. 30, 2025) (Altman, J.); *see also Doe (V.H.)*, 2024 WL 3859882, at *2 ("While they have officers who live in and work from Florida, it cannot be said that this amounts to operating or managing the hotel from Florida. So any negligence in operation or management functions that caused Appellants' injury is not directly affiliated to their limited presence in Florida.").

The two other theories the Plaintiff relies on fare no better. *First*, the AC alleges that DigiTraidx is "bound by the jurisdictional provisions of the promissory notes executed by . . . DMX [ ] in favor of Ireland." AC ¶ 17. To be sure, "the personal jurisdiction requirement is a waivable right," which means that, "so long as a forum-selection clause is applicable and not unreasonable and unjust,

its enforcement does not offend due process." *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1291 (11th Cir. 2022) (cleaned up). Still, "[u]nder Florida law, clauses conferring personal jurisdiction are insufficient to establish *in personam* jurisdiction, absent an independent basis for jurisdiction under the long-arm statute." *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 919 (11th Cir. 1989). And, as we discussed above, the AC points to a forum-selection clause but otherwise fails to plead sufficient facts to establish specific jurisdiction.

*Second*, the Plaintiff now suggests that we can exercise personal jurisdiction because "Jayasinha and Ruiz made fraudulent misrepresentations to [the] Plaintiff, a Florida citizen, to induce [the] Plaintiff . . . to refrain from suing DMX before Jayasinha and Ruiz transferred its sole asset . . . to DigiTraidx for pennies on the dollars," thereby "caus[ing] substantial damage to [the] Plaintiff[.]" Response at 12; *see also ibid.* ("The Complaint sufficiently pleads that both Jayasinha and Ruiz engaged in conduct that caused substantial damages in Florida, which conduct is sufficiently related to the causes of action for fraud and breach of fiduciary duty pled in the Complaint."). We won't consider this argument because it suffers from a fatal procedural flaw: Nowhere does the AC mention a fraudulent-misrepresentation theory of personal jurisdiction. To the contrary, the Plaintiff introduces this hook *only* in response to the MTD, even though "review on a motion to dismiss is limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quotation marks omitted). "Because [our Plaintiff] raised this argument for the first time in . . . response to [the] motion to dismiss, instead of seeking leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a), it was not properly raised." *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011); *see also Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007)

("Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss.").[5]

\* \* \*

The Magistrate Judge found that we lack personal jurisdiction over the Defendants. The Plaintiff offers no objection to—and we discern no clear error in—that finding. And, since "[a] court without personal jurisdiction is powerless to take further action," *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999), we grant the MTD.

## II.    Leave to Amend

The Eleventh Circuit has made clear that "filing a motion is the proper method to request leave to amend a complaint"—and that such a motion "should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (cleaned up). Instead of moving for leave to amend, however, our Plaintiff tacked a cursory request to the close of his Response—and did so without *any* argument as to how an amended complaint might overcome the deficiencies the Defendants (and the Magistrate Judge) identified. *See* Response at 26 ("Alternatively, Plaintiff requests the opportunity for leave to amend any portion of the A[C] that this Court deems insufficiently pled."). But "[a] request for a court order must be made by motion" that "state[s] with particularity the grounds for seeking

---

[5] We explained above why we needn't consider the claims against DMX. But our outcome today would remain the same even if we reached those claims because the AC recycles (nearly) identical personal-jurisdiction allegations for both DigiTraidx and DMX. The sole difference between those allegations is that the AC adds that DMX had a "CEO and manager . . . located in Florida." AC ¶ 16. But merely noting that corporate officers live in Florida, without more, isn't enough to confer personal jurisdiction. *See Karnas*, 2025 WL 3759241, at *6 ("The SAC points out that Cuban owns 'two condominiums on Miami Beach and travels to Florida either for personal reasons or for Mavericks away games in Miami and Orlando multiple times per year.' But it doesn't connect this lawsuit to those Florida trips. Had the SAC alleged that Cuban 'visited Florida for the specific purpose' of conducting *business*, there's still nothing in the record linking those business operations with the cause of action in this case." (cleaned up)).

the order." FED. R. CIV. P. 7(b)(1). And, "where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) (cleaned up); *see also Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1298 (11th Cir. 2025) ("The only place that [Plaintiff] requested leave to amend was on the last page of his response in opposition to the defendants' motions to dismiss," so "it had no legal effect." (cleaned up)).

Our Plaintiff disregarded those requirements. And we cannot envision, on the record before us, how another amendment might circumvent the jurisdictional problems discussed above. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) ("[A] district court may properly deny leave to amend the complaint . . . when such amendment would be futile."). Those issues—combined with the Plaintiff's decision not to object to the R&R's personal-jurisdiction determination and repeated failure to timely effectuate service of process—counsel in favor of withholding leave to amend. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte[.]").

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1.     The Report and Recommendation [ECF No. 58] is **ACCEPTED and ADOPTED** as to the personal-jurisdiction analysis.

2.     The Defendants' Motion to Dismiss [ECF No. 45] is **GRANTED without** .

3.     The parties' Objections [ECF Nos. 63, 64] are **OVERRULED**.

4.     This case is **DISMISSED without prejudice** and without leave to amend.

5.     This case shall remain **CLOSED**. All deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on June 30, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**